UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

IN RE )
) Bankruptcy Case
MICHAEL WEBB GREEN and ) No. 13-60271-tmr13
GLADYS MONZON GREEN, )
) MEMORANDUM OPINION
Debtors. )

Procedural Posture:

The Trustee has objected to confirmation of Debtors' Chapter 13 plan dated January 28, 2013. An evidentiary hearing was held on June 18, 2013, after which the Court took the matter under advisement.

Facts:

On May 29, 2009, Debtors Michael and Gladys Green filed Chapter 13 Case No. 09-62843-fra13. At the time they owned two vehicles, one a 1999 Chevy Silverado pick-up truck, the other a 2000 Mazda MPV. Each vehicle secured a separate claim of Selco Community Credit Union (Selco). Their plan dated May 29, 2009, proposed to pay the Trustee $350 per month. From that amount it proposed to pay in full the claim secured by the Silverado (approximately $7,530) with 7% interest at $100 per month, increasing to $215 per month after attorney's fees were paid. It further proposed to pay the claim secured by the Mazda at the vehicle's proposed value ($3,500), with 7% interest at $50 per month, increasing to $100 per month after attorney's fees were paid.

// // //

MEMORANDUM OPINION-1

The plan was confirmed on September 10, 2009. It was amended through the confirmation order to provide for a step-up of the payment to the Trustee to $430 per month commencing June 2010. It also replaced the above monthly payments to Selco with a combined $150 per month payment until attorney's fees were paid in full, after which all available funds would be dedicated. The confirmation order prohibited Debtors from incurring credit during the plan's life without the Trustee's written consent unless made necessary by emergency.

The Mazda soon became inoperable. On February 4, 2010, Debtors filed and noticed an amended plan of the same date which provided for the Mazda's surrender. It also lowered the stepped payments to $270 per month starting February 2010, and then increased them to $321 per month starting February 2011. It continued payments to Selco on the claim secured by the Silverado. The amended plan was supported by amended Schedules I and J. Those schedules did not appear to budget for a second vehicle. No objections were filed within the time set by the Court, and the amended plan thus became the confirmed plan. The confirmation order's terms remained in effect to the extent they were not inconsistent with those of the amended plan. When the amended plan was noticed, an amended wage order was entered requiring Michael Green's employer to make $270 per month payments to the Trustee until February 2011 when payments were to increase to $321 per month.

On February 4, 2011, and without seeking the Trustee's prior approval, Debtors purchased a 2002 Chrysler Sebring from R & L Motors, Inc. (R & L), agreeing to make 46 bi-weekly payments of $135. Michael Green testified the family needed two operable vehicles as co-debtor Gladys Green needed her own transportation to commute to and from school. He testified he was aware of the requirement to obtain Trustee approval of post-confirmation credit but decided to just go ahead and purchase the Sebring because the family needed it.

At some point the Sebring had mechanical issues and became inoperable. On February 29, 2012, the Debtors returned to R & L where, without notice to the Trustee, they exchanged the Sebring for a 1999 Dodge Durango, agreeing to pay $400 per month for 22 months on the new contract. After a few months the Durango had mechanical problems and became inoperable. On July 20, 2012, again without notice to the

MEMORANDUM OPINION-2

Trustee, Debtors exchanged the Durango for a 2001 Ford Focus, agreeing to pay $400 per month for 18 months. On November 19, 2012, R & L re-wrote the Ford Focus contract, reducing the purchase price to $3,990, payable with 21.75% interest at $175 per month for 31 months.

Meanwhile, on November 7, 2012, the Trustee moved to dismiss the case based on four defaulted plan payments ($971.44) and failure to submit 2010 and 2011 tax returns and refunds, if any. Debtors maintain their payment default was caused by Michael Green's employer's failure to comply with the amended wage order's requirement to step-up payments in February 2011. They argue by the time the Trustee's motion to dismiss was filed, no meaningful amended plan could be filed to cure the default.[1] As for the 2010 and 2011 tax returns and refunds, Michael Green has conceded he did not submit the returns to the Trustee for review and, that for 2010, a refund was due but part of it was intercepted by the applicable taxing authority to apply to prior years' obligations. Debtors did not respond to the Trustee's motion and the case was dismissed on December 11, 2012.

On January 31, 2013, Debtors filed the instant Chapter 13 case. Their schedules listed amongst other debt, medical and tax obligations incurred since the first case. They listed the Silverado and Focus on Schedule B as their only vehicles. They claimed a $517 ownership expense deduction for the Focus on the means test form.[2] Form B22C, line 29.a.[3] Their monthly disposable income calculation was a negative $213.25. Form B22C, line 59.

Debtors' instant plan is dated January 28, 2013. They propose to: 1) make $380 monthly payments to the Trustee; 2) cram-down Selco's claim secured by the Silverado to $3,800; and 3) pay R & L's claim

---

[1] See Motion to Extend Stay (Doc. #11) filed in the instant case.

[2] Debtors are above-median income earners and thus subject to the so-called "means test" applied in Chapter 7 cases. In Chapter 13 the means test is used to compute disposable income, which is the starting point for determining the projected disposable income a debtor must dedicate to the plan upon objection by the trustee or an unsecured creditor. 11 U.S.C. § 1325(b)(1)-(3) (incorporating §§ 707(b)(2)(A)-(B)).

[3] Debtors also claimed a $433 average monthly payment for the Focus, Form B22C, line 47.a, which they deducted from the ownership expense. Form B22C, line 29.b. The net effect was to claim the full $517.

MEMORANDUM OPINION-3

secured by the Focus directly per the re-written contract terms. They also propose an approximate 0% dividend to general unsecured creditors. As proposed, the plan will end when secured, priority,[4] and administrative (including unpaid attorney's fees) claims are paid in full.

Discussion:

At the outset, it would be beneficial to clarify some of the disposable income issues, as opposed to those impacting good faith. In the Trustee's supplemental objection he argues it is inappropriate to allow the $517 vehicle ownership expense, and, alternatively if any expense is allowed, it should be limited to $85 which is the monthly amount of the unpaid balance of R & L's secured claim amortized over 60 months. Either adjustment, he argues, would put Debtors in a positive projected disposable income status mandating a fixed 60 month plan[5] and a dividend to general unsecured creditors. As a "projected disposable income" objection under 11 U.S.C. §§ 1325(b)(1)(B), (2),[6] this argument fails. Quite simply, in these circumstances, Debtors are entitled to the expenses the means test allows. Drummond v. Welsh (In re Welsh), 711 F.3d 1120, 1127, n. 28 (9th Cir. 2013); In re Cummings, 2007 WL 6362250, *6 (Bankr. D. Or. 2007).

The Trustee's main argument is that the plan is not proposed in good faith. § 1325(a)(3). Debtor has the burden of proof. Amfac Distrib. Corp. v. Wolff (In re Wolff), 22 B.R. 510, 512 (9th Cir. BAP 1982), called into doubt on other grounds, Meyer v. Renteria (In re Renteria), 470 B.R. 838 (9th Cir. BAP 2012). The Trustee argues it is not good faith to propose a plan based in part on a means test calculation when the

// // //

---

[4] The Internal Revenue Service and Oregon Department of Revenue have respectively filed $5,384.33 and $1,710.47 priority claims.

[5] Taking the ownership expense puts Debtors in a negative projected disposable income status and, as such, absolves them from a fixed 60 month plan. See In re Reed, 454 B.R. 790, 801–03 (Bankr. D. Or. 2011) (holding Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868, 872 (9th Cir. 2008) survived Hamilton v. Lanning, __U.S.__, 130 S. Ct. 2464 (2010) on the issue of negative projected disposable income, no applicable commitment period).

[6] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-4

secured debt enabling that calculation[7] was incurred in willful violation of the confirmation order in Debtors' previous case. This brings to bar the issue of how far <u>Welsh</u> extends. There, the Ninth Circuit reaffirmed the totality of the circumstances test for good faith and affirmed the Bankruptcy Appellate Panel's (BAP) holding that a debtor's use of the means test allowances could not, absent more, be a negative circumstance.

Under the good faith test, the court considers:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present.

<u>Welsh</u>, 771 F.3d at 1132. The Ninth Circuit's opinion did not discuss whether pre-petition conduct which arguably could be considered manipulation of the means test, or at least inequitable or egregious vis-a-vis that test, could be considered in the good faith analysis. The BAP's opinion however was specific on this point, stating:

> We do not preclude consideration of other circumstances indicative of a lack of good faith in a case in which a debtor claims expenses for payments on debt secured by unnecessary property and excludes income that the Code expressly excludes. For example, a court may consider whether a secured debt was incurred shortly before bankruptcy in an attempt to exclude the income used for those payments from payments under the plan. A court may consider whether a debtor who excludes income as allowed by the Code allocates expenses in such a way as to allow the build-up of a substantial surplus with the excluded income over the life of the plan. *See, e.g., Herrmann,* 2011 WL 576753. These additional facts, taken into account under the totality of the circumstances, may show an unfair manipulation of the Bankruptcy Code or egregious behavior, which are relevant to whether the plan was proposed in good faith.

<u>Drummond v. Welsh (In re Welsh)</u>, 465 B.R. 843, 856-857 (9th Cir. BAP 2012). Thus, pre-petition conduct impacting the disposable income/means test, if it smacks of bad faith, can be considered. There is no indication the Ninth Circuit's opinion was meant to limit these considerations.

---

[7] <u>See</u> <u>Ransom v. FIA Card Servs., N.A.</u>, __ U.S. __, 131 S. Ct. 716, 725-726 (2011) (only debtors financing or leasing a vehicle may take the vehicle ownership expense deduction under the means test).

MEMORANDUM OPINION-5

Here, Debtors (or at least Michael Green)[8] willfully disobeyed the confirmation order. The question is whether that activity rises to a lack of good faith. Examining the good faith factors in no particular order, there is no evidence Debtors filed bankruptcy to defeat state court litigation or that they misrepresented facts in their petition. Neither can it be said they "manipulated" the Code, as that term connotes a conscious/intentional effort to achieve a result,[9] whereas here, there is no evidence Debtors were conscious of the fact that taking out a vehicle loan without permission would benefit them in a subsequent bankruptcy. As to the history of filings and dismissals, Debtors are multiple filers with a previous dismissed case. Trustee, however, does not argue the filings themselves were abusive or that the previous dismissal was within Debtors' control. He only objects to taking the ownership expense in the second case.

Whether the plan was filed in an "inequitable manner" merits more extensive discussion. Equity requires fairness. Intentionally violating a court order and then taking advantage of that violation to creditors' detriment is neither fair nor equitable. The prohibition on unapproved post-confirmation credit, as well as the other protections built into ¶ 2 of this District's form confirmation order,[10] are designed to protect the integrity of the Chapter 13 system. In particular, they guard against dissipation of assets and allow oversight of financial events that impact the plan's feasibility and/or the need for an amended plan. Purposefully subverting those protections four times (Sebring, Durango, and Focus (twice)) should have consequences. By their silence, Debtors avoided those consequences in their first case (e.g. dismissal,

---

[8] It is unclear whether or not joint debtor Gladys Green knew she was violating the confirmation order. However, even assuming only Michael Green had such knowledge, if the Court finds he lacked good faith in proposing the instant plan, that scuttles the current plan as it is a joint plan.

[9] See Merriam-Webster Online Dictionary, http://www.meriam-webster.com/dictionary/manipulate (as searched August 19, 2013) (defining "manipulate" as: "to control or play upon by artful, unfair, or insidious means especially to one's own advantage").

[10] Paragraph 2 also imposes upon debtors a duty to immediately report gross income increases of more than 10%, and receipt of distributions (other than regular monthly income) of more than $2,500. It also prohibits debtors from buying, selling, leasing (other than a lease of property where debtors will reside), encumbering, disposing, or using real property, or personal property worth more than $10,000, without notice and opportunity for hearing.

MEMORANDUM OPINION-6

potentially with a time bar to future filings), all the while benefitting from § 362's automatic stay for approximately 22 months (Sebring purchased in February 2011; dismissal in December 2012). Debtors' violations may have been mitigated had they adduced evidence the Trustee would have approved each of the four car loans. However, no such evidence was adduced. In fact, based on the most recent budgets filed in the first case (amended Schedules I and J filed in February 2010), Debtors could not have afforded to make both the plan and vehicle loan payments, such that a further amended plan would have been necessary. However, no further amended plan was filed.

In a case discussing unapproved credit incurred in a prior case, amidst a wide-ranging discussion of good faith, the court did not hold the debtors' failure to obtain credit approval against them, finding it "resulted from a lack of understanding as to their obligations in that regard rather than an intentional violation of the order of confirmation." In re Coburn, 175 B.R. 400, 403 (Bankr. D. Or. 1994). The court further found in mitigation that the items purchased on credit (i.e. household furniture) were necessary and that "given the debtor's testimony, had approval been sought, it would have been granted." Id. Here, as discussed above, while the vehicles may have been necessary, the debts against them were incurred in willful violation of the confirmation order instead of from a lack of understanding as to Debtors' obligations. Further, as noted above, there was no evidence the Trustee would have approved the four vehicle loans. Finally, and as further evidence of lack of good faith, Debtors failed to turn over the 2010 and 2011 tax returns in their first case, as well as any un-intercepted portion of the 2010 refund. This again evidences Debtors' proclivity to accept the benefits of Chapter 13 without the burdens.

A finding the current plan is not proposed in good faith does not necessarily connote Debtors are bad people. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999) (finding of bad faith need not be premised on intentional fraudulent behavior). Further, there is a distinction between a plan proposed in bad faith and an entire case filed in bad faith. Here the Trustee does not argue Debtors should be kicked out of bankruptcy. Rather, he asserts Debtors must do more here to show good faith. The Court agrees. Based on Debtors' lack of good faith, confirmation will be denied. Debtors will have 21 days to file a modified plan.
// // //

MEMORANDUM OPINION-7

The above constitutes the Court's findings of fact and conclusions of law under FRBP 7052. A separate order consistent herewith will be entered.

/s/ Thomas M. Renn
THOMAS M. RENN
Bankruptcy Judge

MEMORANDUM OPINION-8